*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES M. FARESE and NANCY FARESE,

        Plaintiffs/Counter-Defendants-
        Appellees/Cross-Appellants,

v

AMERICAN TOWER CORPORATION and DCS
TOWER SUB, LLC,

        Defendants/Counter-Plaintiffs-
        Appellants/Cross-Appellees.

UNPUBLISHED
February 20, 2020

No. 343446
Leelanau Circuit Court
LC No. 2016-009792-CH

Before: SHAPIRO, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Following a bench trial, the trial court awarded plaintiffs a total of $25,371 in damages for trespass and concluded that they were entitled to attorney fees because defendants had employed a frivolous defense. Defendants appeal the trial court's opinion and order, challenging the award of attorney fees. In a cross-appeal, plaintiffs challenge the court's earlier ruling that defendants were entitled to summary disposition with regard to plaintiffs' claim of nuisance per se. We reverse in the main appeal and affirm in the cross-appeal.

## I. BACKGROUND

Plaintiffs bought a parcel of rural property in northern Michigan in April 2014. They knew at the time of purchase that the parcel was subject to a perpetual easement agreement that was signed in 2011 in connection with a cellular tower (the Tower) located on the property. Defendant DCS Tower Sub, LLC (DCS) was a signatory to the easement; defendant American Tower Corporation (ATC) is DCS's parent company. In September 2016, plaintiffs filed suit, claiming trespass on the basis that users of the Tower were exceeding the scope of easements set forth in the agreement. Plaintiffs also alleged nuisance per se, asserting that the Tower violated the Leland Township Zoning Ordinance and requested removal of the structure.

Relevant to this appeal, the parties disputed the scope of the so-called "compound area easement" (CAE), containing the Tower itself and accoutrements. The easement agreement

describes the CAE as being 200 square feet, and defendants conceded that the Tower and its equipment exceeded those dimensions. But an "As-Built Survey" conducted around the time of execution of the easement agreement, and attached to the agreement in the Register of Deeds, showed a 270-square-foot area. The parties disputed which figure—200 square feet or 270 square feet—was the true applicable scope of the easement, with plaintiffs arguing that the former applied and defendants arguing that the latter applied.

At the summary disposition stage, the trial court determined that plaintiffs could not maintain their nuisance-per-se claim given that the Township had previously determined that the Tower was a legal nonconforming use. The court also denied plaintiffs' request for summary disposition of the trespass claim regarding the CAE. The court reasoned that the as-built survey attached to the easement agreement suggested that there was an ambiguity regarding the scope of the easement. However, after a bench trial, the court found that the easement agreement controlled and awarded plaintiffs damages on the trespass claim.[1] The court then sua sponte determined that defendants employed a frivolous defense—one without arguable legal merit—regarding plaintiffs' claims of trespass regarding the CAE and therefore awarded plaintiffs' attorney fees under MCL 600.2591.

## II. DEFENDANTS' APPEAL

Defendants argue that the trial court clearly erred in determining that they asserted a frivolous defense. We agree.[2]

A court may assess costs and attorney fees against a party as a sanction for asserting a frivolous action or defense. MCL 600.2591(1). An action or defense is frivolous if any of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

---

[1] The trial court also resolved disputes surrounding two additional, secondary easements set forth in the easement agreement—an access easement and a utility easement. Those rulings are not relevant to this appeal. Further, plaintiffs also asserted a nuisance-in-fact claim, but given the award of damages for trespass, the trial court declined to rule on that claim because no additional damages were available. Plaintiffs do not challenge that ruling on appeal.

[2] A trial court's finding of frivolousness is reviewed for clear error. *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

(*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(a)(*i*)-(*iii*).]

"[A] claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013) (quotation marks and citation omitted). The reasonableness of an attorney's inquiry into the factual and legal viability of a defense is "determined by an objective standard and depends on the particular facts and circumstances of the case." *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995).

The defense at issue is defendants' argument that the as-built survey established a scope of 270 square feet for the CAE and that defendants were, therefore, not liable for trespass damages. After the bench trial, the court concluded that this argument was devoid of legal basis because in ATC's original answer to the complaint it admitted that the dimensions of the CAE set forth in the easement agreement were 10 feet by 20 feet and that the Tower exceeded the CAE. The as-built survey was attached as part of the easement agreement to plaintiffs' complaint and all subsequent amended complaints. In response to the second amended complaint which added DCS as a party, defendants denied that the CAE was limited to 10 feet by 20 and maintained that the correct dimensions were 10 feet by 27 feet. Defendants admitted that the Tower and its equipment exceeded a 200 square-foot area, but denied that the CAE was so limited.

It appears that the trial court, by referring to the first answer, was attempting to demonstrate that the defense was aware that the easement agreement described the scope of the CAE as 200 square feet and that the Tower was exceeding this scope. The court apparently believed that defendants, based on this answer, should not have relied on the 270-square-foot area mentioned in the as-built survey and should have conceded trespass because the CAE was 200 square feet and the Tower exceeded that area. However, there is no court rule or caselaw that precludes a party from changing its defense, especially in response to an amended complaint that adds a new party defendant. Further, a pleading that is superseded by a substitute pleading is not a conclusive judicial admission. *Beals v Walker*, 98 Mich App 214, 233; 296 NW2d 828 (1980), rev'd on other grounds 416 Mich 469 (1982). And in answering the operative complaint (i.e., the second amended complaint), defendants did not admit that the CAE was limited to 200 square feet. Thereafter, defendants consistently maintained that the as-built survey should control the CAE's dimensions. So, ATC's initial concession was immaterial.

In finding that defendants asserted a frivolous defense, the court also referred to trial testimony that the Tower and associated equipment took up more than 270 square feet. Christopher Clark, a representative of defendants, testified at trial that he believed that there was some amount of encroachment beyond 270 square feet, but he did not know the amount. The trial court evidently cited this testimony to support its opinion that defendants knew they were trespassing. But defendants did not concede a 200-square-foot area for the CAE, which was the primary allegation by plaintiffs. It was not frivolous for defendants to contest that particular restriction and argue that

the allowable area was larger (i.e., 270 square feet) and that any trespass beyond that was small and resulted in minimal damages.[3]

We also note that the trial court had denied plaintiffs summary disposition because it found that the as-built survey created a question of fact regarding the CAE's dimensions. Considering that the survey and the agreement were drafted around the same time, the court concluded that they were arguably intended to be read together and therefore summary disposition was not appropriate.[4] It is difficult to conclude that this defense was "devoid of arguable legal merit," MCL 600.2591(3)(a)(*iii*), when the trial court itself ruled that the defense necessitated a trial. Such a holding would suggest that defendants should have contradicted a trial court ruling that inured to their benefit. This case is similar to *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 439 n 29; 830 NW2d 785 (2013)*,* in which the Tax Tribunal granted the taxpayers a hearing but ultimately ruled in the township's favor. The township argued that it was entitled to costs because the hearing was frivolous, and we concluded that the Tribunal did not err in granting a hearing. But even if holding the hearing was erroneous, we failed to see why the taxpayers

> should be held accountable for the 'unnecessary' hearing. Simply because the Tribunal ultimately rejected the [the taxpayers'] facts and legal arguments does not mean that the [the taxpayers] did not have a good faith basis to advance those facts and arguments. In light of the Tribunal's rulings denying the parties' motions for summary disposition, the [taxpayers] had a good faith basis to believe that the hearing was necessary to resolve disputed facts. [*Id*. at 426-427.]

As in *Pontiac Country Club*, we are not inclined to impose fees against defendants for asserting a frivolous defense when the trial court reasonably determined that their argument presented a question necessitating trial. Plaintiffs contend that an attorney's subjective good faith is not a relevant inquiry in assessing whether a defense is frivolous, but here defendants had an objective ruling from the presiding court that validated their defense.

Further, defendants reasonably argued that the as-built survey best represented the intended scope of the easement. See *Wiggins v City of Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011). It is undisputed that—at the time of the easement agreement was executed—the Tower and its equipment occupied a 270 square-foot area as shown by the as-built survey. Given this, it is difficult to understand why DCS would agree to dimensions for the CAE that were already being exceeded by the Tower and its equipment. The trial court ultimately determined that the easement

---

[3] The trial court also cited the trial testimony of Brandon Ruotolo, an ATC representative. Ruotolo testified that "there is an encroachment" regarding the Tower's equipment, but he gave no testimony about the extent of the encroachment. Significantly, he also said that any encroachment was worth a "nominal value," thus contesting plaintiffs' damages claims. That was consistent with defendants' position that any encroachment beyond 270 square feet was minimal and worth only a small amount of damages.

[4] The court made references to there being questions of fact for the jury, but the parties and the court later clarified that the case was set for a bench trial, not a jury trial.

agreement was unambiguous and therefore controlled the scope of the CAE,[5] which defendants do not challenge on appeal. However, "[n]ot every error in legal analysis constitutes a frivolous position." *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002). In sum, under all the circumstances, we conclude that the trial court clearly erred in finding that defendants presented a frivolous defense.

## III. PLAINTIFFS' CROSS-APPEAL

Plaintiffs argue that the trial court erred in granting summary disposition of their nuisance-per se claim. We disagree.[6]

"[A] structure erected in violation of a zoning ordinance constitutes a nuisance per se." *Morse v Colitti*, 317 Mich App 526, 554; 896 NW2d 15 (2016), citing in part MCL 125.3407. A private citizen may bring an action to abate a nuisance, "arising from the violation of zoning ordinances or otherwise, when the individuals can show damages of a special character distinct and different from the injury suffered by the public generally." *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990). "All claims based on or to abate nuisance may be brought in the circuit court," and "[t]he circuit court may grant injunctions to stay and prevent nuisance." MCL 600.2940(1). A court's decision whether to abate a nuisance is equitable in nature. MCL 600.2940(5); *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 430; 770 NW2d 105 (2009).

The parties agree that the Tower was constructed in 1997. In 1998, Leland Township began regulating communication towers such as defendants'. The question is whether the Tower was a legal structure at the time of its erection such that it was "grandfathered" in and not subject to the new regulations, under which it would be considered nonconforming. In 2004, the prior zoning administrator, Robert Hagstrom, sent a letter to DCS's predecessor indicating that the Tower was indeed grandfathered in and that no zoning procedures were necessary for it. Hagstrom's successor, Timothy Cypher, expressed agreement with this in a 2008 letter and also issued a permit

---

[5] The trial court's determination that the easement agreement was unambiguous was based, in part, on the trial testimony that the as-built survey was not completed when the easement agreement closed. Defendant's witness Jay Schwandt, who performed the as-built survey for Geoline Surveying testified that he sent the first "drawing and information" to Geoline at 2:55 p.m. on December 29, 2011, the date that easement agreement closed. He said that he had no reason to believe "that the initial survey didn't go directly to the third party," i.e., DCS, on December 29, but he did not know one way or the other. Even though the survey was not finalized until January, Schwandt's testimony was consistent with defendants' position that the survey was representative of the intent behind the easement. Accordingly, this was not a case where the defendant presented proofs at trial that contradicted a prior position.

[6] We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Equitable decisions are also reviewed de novo, and the supporting findings of fact are reviewed for clear error. *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 430; 770 NW2d 105 (2009).

in April 2011 for a platform for the Tower. But during or shortly before this litigation, Cypher changed his mind and stated that the Tower had been illegal at the time of its erection.

In granting defendants' summary disposition, the trial court stated that plaintiffs could not maintain a nuisance-per-se claim "given the 2004 determination from Mr. Hagstrom." The court noted Cypher's later conflicting opinion, but agreed with defendants that the Township was barred by the doctrine of laches. The court reasoned that "there's been excessive delay" regarding the Township's new position and that defendants would be prejudiced by the Township taking a different position considering that the Tower has operated on the property for over 20 years.

As an initial matter, we agree with plaintiffs that the trial court erred in relying on the doctrine of laches. "If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches." *Knight v Northpointe Bank*, 300 Mich App 109, 114; 832 NW2d 439 (2013). Here, however, the delay referred to by the trial court was attributable to the Township, not plaintiffs. Accordingly, laches was not an appropriate ground to deny relief in this case.

That said, the trial courts reliance on laches and the court's statement of reasons for granting summary disposition show that the court was concerned with the equities of granting an abatement in this case. It is undisputed that defendants have relied on the Township's representations and would be prejudiced by an order to remove the structure. In addition to Hagstrom's 2004 determination, in July 2011 Cypher issued a permit for a 200-square-feet platform. DCS clearly relied on the Township's acquiescence to the Tower when paying valuable consideration for the perpetual easement in December 2011, and the easement would be of no utility at all to defendants were the Tower to be disallowed.

Plaintiffs' position must also be considered in examining the equities of the case. See *McFerren v B&B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002) ("A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates."). Here, plaintiffs were fully aware of the easement agreement and of the Tower's existence at the time they purchased the property. While they now believe that the Tower is an illegal nonconforming use, that does not change the fact that the property was purchased with full knowledge of the structure. Thus, plaintiffs are unable to explain how the value of their property has been affected, and depreciation of value, or lack thereof, is an appropriate consideration in determining whether to abate an alleged nuisance.[7] See *Conway v Gampel*, 235 Mich 511, 514; 209 NW 562 (1926) (affirming an injunction against the operation of a slaughterhouse in a residential neighborhood where there was "evidence that the claimed nuisance has depreciated the value of the property of some of the plaintiffs."). Moreover, plaintiffs' nuisance-per-se claim is

---

[7] Defendants argue that summary disposition was appropriate because plaintiffs did not plead or attempt to prove special damages. At first blush, it might seem obvious that plaintiffs, as the owners of the property in question, would have damages different from the injury suffered by the public generally due to the alleged zoning violation. However, we question whether plaintiffs have suffered special damages if the property value has not diminished since the time of purchase. But given our disposition of plaintiffs' cross-appeal, we need not decide this issue.

wholly distinct from their trespassing claim, for which they have now been awarded damages. The trespass claim asserted that defendants were exceeding the scope of the easements; the nuisance-per-se claim alleges that the Tower's existence, in and of itself, violates the zoning ordinance.

In sum, while the trial court made technical errors in granting summary disposition,[8] the substance of its ruling was that removing the Tower would not be equitable under the circumstances of the case. For the reasons discussed, we see no error in that determination. Under the circumstances of this case, the trial court did not err in granting defendants summary disposition of the nuisance-per-se claim.[9]

We reverse in the primary appeal and affirm in the cross-appeal.

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[8] We also agree with plaintiffs that the trial court erred in granting summary disposition under MCR 2.116(C)(8) for failure to state a claim. The applicable subrule is MCR 2.116(C)(10) (no genuine issue of material fact). However, we may affirm the trial court when it reaches the right result for the wrong reason. *Wickings v Artic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000).

[9] Our ruling is limited to the facts of this case and has no bearing on any action that the Township might take regarding the Tower.